GEORGE P. SACKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39851. Promulgated January 29, 1932.

*J. B. Grice, Esq.,* for the petitioner.
*Hartford Allen, Esq.,* for the respondent.

### OPINION.

VAN FOSSAN: The respondent determined a deficiency of $6,078.38 in income taxes for the year 1925. This action was based on the disallowance of an alleged net loss of $43,307.21 shown in petitioner's 1924 return. The figure of $43,307.21 was based principally on two items, one of $15,261.59, an alleged loss incurred in the sale of stocks, and the second of $44,101.76, an alleged loss in connection with Golden and Company. Respondent disallowed both items as not falling within the provisions of section 206 of the Revenue Act of

1926, holding that the first was not incurred in a trade or business regularly carried on, and that the second arose from an investment.

Petitioner has been engaged in business in Washington, D. C., since 1892, much of that time in some phase of the manufacture and marketing of dairy products. Prior to 1904 the business was conducted as a partnership under the name of Chapin & Sacks. In 1904 the business of Chapin & Sacks was sold to Golden and Company, a concern engaged in the dairy and meat business. Thereupon petitioner became an officer of Golden and Company, being in charge of finances. As consideration for his interest in the partnership petitioner received $25,450 in stock of Golden and Company. Petitioner remained in an official position with Golden and Company until 1910, when he assumed the presidency of Columbia Cotton Oil Company, with which he was connected for two years. In 1912 he became the financial executive of Chapin and Sacks Manufacturing Company and about this time or later assumed similar positions in various other companies located in other cities but engaged in the same line of business—the production of ice cream and dairy products. Chapin and Sacks Manufacturing Company was succeeded by Chapin-Sacks Corporation in 1920 and petitioner became vice president and chairman of the board of the company in charge of its finances. Petitioner disposed of his entire holding in Chapin-Sacks Corporation November 13, 1923, and resigned his official positions effective December 31, 1923.

During all the years from 1904 to 1923, while engaged as above indicated, petitioner was also engaged in buying and selling stocks for his own account, in the earlier years his transactions running from forty to sixty per year and involving several hundred thousand dollars. During the later years of this period his trading in stocks increased. During 1923 he devoted approximately two hours each day to this activity.

Beginning in 1924, after retiring from other activities, petitioner devoted the major part of his time to the market, making studies and analyses of stocks and market conditions. The volume of transactions increased and has continued substantially up to the year of the hearing. Petitioner estimated that the total value of all transactions from 1923 to the present, listed at the value of the stocks bought or sold, would approximate $40,000,000.

The loss on stock incurred during 1924 arose from some thirty-seven transactions of sale. During the year petitioner also bought stocks on numerous occasions, both on margin and outright.

After petitioner retired from official position with Golden and Company in 1910 he continued to own stock therein and acted as a director thereof. In April, 1923, the president of the company

committed suicide and thereafter, sometime during 1923, a petition in bankruptcy was filed. The company was wound up in 1924, the creditors receiving approximately 35 per cent of claims and the stockholders receiving nothing. On November 26, 1923, a bill of complaint was filed by the trustee in bankruptcy against petitioner and other officers and directors of Golden and Company, alleging neglect and mismanagement in the conduct of the affairs of Golden and Company and praying an accounting and other relief. The litigation was terminated in 1924 by a compromise payment of $37,500. Of this sum petitioner paid $12,500, which is one item of the sum of $44,101.76 claimed by petitioner as a loss in 1924. The other items were $25,490, the cost or value of the petitioner's investment in stock of Golden and Company; $3,901.76 paid to Continental Trust Company on account of a note of Golden and Company on which petitioner was an endorser; and $2,250 attorney fees paid in connection with the Golden and Company matter, the latter two items paid in 1924.

The first item involved is the loss arising from sales of stock on the market. Petitioner contends, and respondent denies, that petitioner was during the year 1924 regularly engaged in the business of buying and selling stocks. On the evidence we are satisfied that petitioner should prevail. For a number of years petitioner had regularly traded in stocks, had devoted some part of each day thereto, and had made it a regular part of his business activity. In 1924 petitioner increased his activity in this field until it was his principal activity. The loss of $15,261.59 was incurred in a trade or business regularly carried on. *Harry F. Harper*, 20 B. T. A. 143; *William A. Hodgson*, 24 B. T. A. 256.

The second item arose from petitioner's connection as a stockholder, officer and director in Golden and Company, which company went into bankruptcy in 1923, with no recovery to stockholders. The action of respondent in disallowing this item was correct and is approved. *Fridolin Pabst*, 6 B. T. A. 843; affd., Court of Appeals, D. C., 36 Fed. (2d) 614; *Harry J. Gutman*, 7 B. T. A. 500.

Petitioner's stock interest was an investment in the corporation. This was lost in 1923 or earlier. Moreover, this item, as well as the expenditure on account of the indorsement of the note of Golden and Company, the payment to compromise and settle the suit for mismanagement, and the payment to attorneys in connection with the law suit, were all related to the defunct Golden and Company and did not constitute losses incurred in a trade or business regularly carried on. There is no basis for petitioner's claim for allowance of this item of $44,101.76.

*Decision will be entered under Rule 50.*