## DU PONT v. COMMISSIONER OF INTERNAL REVENUE. *

### No. 6453.

Circuit Court of Appeals, Third Circuit.

June 24, 1938.

·Writ of certiorari denied 59 S.Ct. 97, 83 L.Ed. ——.

Ward Loveless and Frederick O. Graves, both of Washington, D. C. (Miller & Chevalier, of Washington, D. C., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

The petitioner purchased prior to the year 1932, the taxable year in question, 5,-800 shares of the common stock of General Motors Corporation, 15,600 shares of the common stock of E. I. duPont de Nemours & Company, 6,500 shares of the common stock of McKeesport Tin Plate Company, and 400 shares of the common stock of United Aircraft & Transport Company. Certificates for these shares were in the possession of the petitioner's brokers, carried in long accounts. All of the stock referred to was acquired by the petitioner more than two years prior to October 11, 1932.

At various times from April 15, 1930 to November 19, 1932, inclusive, the petitioner directed his brokers to sell short, and his brokers did sell short, 5,800 shares of the common stock of General Motors Corporation, 13,400 shares of the common stock of the duPont Company, 6,500 shares of the common stock of McKeesport Tin Plate Company, and 400 shares of the common

stock of United Aircraft & Transport Company. The proceeds of these sales were credited by the brokers to a short account of the petitioner with his brokers.

Upon October 11, 1932, the petitioner's brokers, acting upon the petitioner's instructions, transferred from his long accounts to his short account the necessary number of shares of stock to cover the petitioner's short sales of the common stock of General Motors Corporation and McKeesport Tin Plate Company. Upon this day also, at the petitioner's instructions, his brokers transferred from the long accounts to the short account 11,300 shares of the common stock of the duPont Company, leaving the account of the petitioner short only 2,100 shares of duPont Company common stock. Upon December 17, 1932, acting again upon the petitioner's instructions, his brokers transferred 400 shares of United Aircraft & Transport Company stock from the petitioner's long accounts to his short account, thus closing the short account in respect to this stock. It will therefore be observed that all of the short sales of the petitioner with the exception of the short obligation of 2,100 shares of the common stock of the duPont Company were balanced by transfers from the petitioner's long accounts to his short account no later than December 17, 1932.

The question presented to us for solution may be stated briefly as follows. There was a net gain to the petitioner of $118,396.63 from the sale of the shares of stock delivered. The respondent contends that this gain arose out of a short sale and that therefore the gain is taxable as ordinary income, pursuant to the provisions of subsection (s) of Section 23 of the Revenue Act of 1932, c. 209, 47 Stat. 179, 26 U.S.C.A. § 23 note.[1] The petitioner for his part contends that the gain was capital net gain upon stock held for more than two years prior to sale and therefore must be taxed in accordance with the provisions of subsection (a) of Section 101 of the Revenue Act of 1932, c. 209, 47 Stat. 191, 26 U.S.C.A. § 101 note.[2]

It will be observed that both transactions in the case at bar possessed, to a certain degree, a dual nature and reciprocal characteristics. When the petitioner covered the short sales by delivery of the securities held by him in the long accounts he disposed by one step of a long interest and of a short obligation. The price at which the short sales were made did in fact fix the price or value of the stock delivered by him from his long accounts. On the other hand, the sales made by the petitioner were short sales of the type known generally as "hedging sales" or "sales against the box". Such sales are made when the owner of stock desires to avoid the risk of future price fluctuations of stock owned by him.

---

[1] The pertinent provisions of the Revenue Act of 1932, c. 209, 47 Stat. 179, are as follows:

"§ 23. *Deductions from Gross Income.*
"In computing net income there shall be allowed as deductions:
"* * * * * '* *
"(r) Limitation on Stock Losses. (1) Losses from sales or exchanges of stocks and bonds (as defined in subsection (t) of this section) which are not capital assets (as defined in section 101) shall be allowed only to the extent of the gains from such sales or exchanges (including gains which may be derived by a taxpayer from the retirement of his own obligations).
"* * * * * * *
"(s) *Same—Short Sales.*—For the purposes of this title, gains or losses (A) from short sales of stocks and bonds, or (B) attributable to privileges or options to buy or sell such stocks and bonds, or (C) from sales or exchanges of such privileges or options, shall be considered as gains or losses from sales or exchanges of stocks or bonds which are not capital assets." 26 U.S.C.A. § 23 note.

[2] "§ 101. *Capital Gains and Losses.*
"(a) Tax in Case of Capital Net Gain. In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.
"* * * * * * *
"(c) *Definitions.* For the purposes of this title—
"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.
"* * * * * * *
"(8) 'Capital assets' means property held by the taxpayer for more than two years * * *". 26 U.S.C.A. § 101 note.

He has shares on hand and available but does not desire to dispose of them immediately for reasons which he deems sufficient. If the stock declines, he can cover at a profit. If the stock increases in value, he can deliver the shares which he owns and avoid loss.

James Edward Meeker, Economist to the New York Stock Exchange, states in his book "Short Selling"[3], "A short sale may be briefly but comprehensively defined as a sale which creates a debt in terms of goods". The sales made by the petitioner from April 15, 1930 to November 19, 1932, inclusive, are precisely within the definition given by Meeker. The net gain realized to the petitioner was in fact realized by reason of such sales. The amount of the gains is estimated by the sum of the difference between the cost of the long interest of the petitioner and the sum realized by the short sales.

It is true that the petitioner purchased the stock in his long account for purposes of profit, and to say that the profit realized did not come from his original investment would be untrue. The fact remains, however, that he moulded the disposition of his long interest into the form and substance of short sales. When the petitioner once ordered his brokers to sell stock short, a covering process of some kind was inescapable. Had he covered the short sales by the purchase of securities upon the open market and had achieved a gain thereby, such a gain would have been the result of a short sale. Had he sold his long interest without relation to a short sale, the net gain, if any, would have been taxable solely under the provisions of Section 101 of the Revenue Act of 1932. But the petitioner has elected to make use of a short sales device to dispose of his long interest. It cannot be said that the sales made by the petitioner were short sales in form and not in substance for they were short sales in fact. In our opinion the case of Provost v. United States, 269 U.S. 443, 46 S.Ct. 152, 70 L.Ed. 352, in which it was held that a short sale contemplates a covering purchase, does not rule the case at bar as contended by the petitioner. In the cited case the Supreme Court was ruling upon the nature of a transaction wherein securities had been sold short and had been covered by the purchase of stock rather than by delivery of stock theretofore held by the taxpayer. The question pre-sented by the case at bar was therefore not before the Supreme Court. The petitioner contends that the hedging transaction, the short sale, was a mere adjunct to the principal transaction, viz., the disposition of a long interest. In our opinion, however, the short sales were not mere adjuncts to the disposition of the long interest of the petitioner, they were the veritable means by which the long interest was disposed of. The short sales did more than fix the price of disposition of the petitioner's long interest. They were in fact the conduit or channel through which the long interest passed out of the petitioner's hands.

In our opinion the contention of the petitioner, viz., that the gain to him was not realized from short sales, is untenable. See Farr v. Commissioner, 33 B.T.A. 557.

■ The petitioner makes a further contention which must be considered. It is to the effect that Section 23 (s) of the Revenue Act of 1932 is a supplement to Section 23(r) which limits deductible losses and has no bearing on net gains. This contention is both plausible and ingenious, and we state frankly that the interpretation of Section 23 of the Revenue Act of 1932 has caused us much difficulty. We cannot accept the contention of the petitioner, however. Subsection (s) contains the phrase "For the purposes of this title", and in so stating, we think that Congress was referring to the whole of "Title I—Income Tax". If the provisions of subsection (s) had been intended by Congress to apply to and serve as a modification of the provisions of subsection (r) the phrase referred to would not have been used. Therefore the provisions of subsection (s) of Section 23 must be deemed to relate not only to limitation of deductible losses but they must also be deemed to relate to calculations of income to individual taxpayers upon net gains. Otherwise the phrase referred to becomes meaningless. We cannot disregard the plain tenor and import of this phrase used in the subsection itself. The heading of the subsection is ambiguous, but the meaning of the text is plain and we cannot set it aside. Cornell v. Coyne, 192 U.S. 418, 430, 24 S.Ct. 383, 48 L.Ed. 504; Strathearn S: S. Co. v. Dillon, 252 U.S. 348, 354, 40 S.Ct. 350, 351, 64 L.Ed. 607. The petitioner also urges upon us that it is inconceivable that after Congress had gone into detail to fix a special rate for

---

[3] Harper and Brothers, 1932.

the taxing of capital gains, that it would change that rate of taxation by language inserted solely in Section 23, which is headed "Deductions from gross income". Indubitably, it is strange that Congress did so but in our opinion the answer is that it did so, and with facts no man can quarrel successfully. The petitioner also takes the position that such a construction results in injustice to the taxpayer. If the result of the transactions of the taxpayer had been net loss instead of net gain, and the theory of taxation of the petitioner were accepted, the taxpayer would be penalized since such a loss would have to be treated as a capital loss.

In the case at bar there were short sales. The net gains to the petitioner arise out of short sales, "* * * from short sales of stocks * * *." The transactions of the petitioner were within the literal language of the applicable statute, viz., subsection (s) of Section 23 of the Revenue Act of 1932.

The decision of the Board of Tax Appeals is affirmed.