**HELVERING, Com'r of Internal Revenue, v. WILMINGTON TRUST CO. et al.**

No. 7662.

Circuit Court of Appeals, Third Circuit.

Sept. 3, 1941.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Wm. S. Potter and William L. Hennessy, both of Wilmington, Del. (Simon F. Mcland, Berl, Potter & Leahy, of Wilmington, Del., on the brief), for respondent.

Before CLARK, JONES, and GOODRICH, Circuit Judges.

CLARK, Circuit Judge.

Taxpayer maintained several security accounts with her brokers. In computing her income tax for 1934 and 1935 taxpayer deducted the sums charged as dividends to her short account from the dividend credits on her long accounts. The Commissioner of Internal Revenue assessed a deficiency for the amount of the deduction on the theory that the accounts were separate. The Board of Tax Appeals refused to uphold the deficiency because it viewed the separation of taxpayer's accounts into long and short accounts as a mere bookkeeping device. It also held that if it were wrong in this respect, taxpayer might still deduct as ordinary and necessary business expenses the dividends charged on the short account.

In two previous cases[1] we have decided that short sales occurred where methods similar to taxpayer's had been employed. We can find no basis for distinguishing these decisions. Quite clearly taxpayer treated the sales as short sales. The transactions were so entered upon her books. Gains or losses were not reported at the moment of sales, as would be done if a long sale were contemplated. Instead the profit or loss entry was not made until the covering transaction was completed. The certificates of stock actually used were in no way designated as belonging to taxpayer. Where dispositions of long stock occur, the proceeds are credited to the seller and are immediately available without restriction. Here, however, the money was withheld for no reason other than such a practice is consistent with a short sale.

In arriving at its conclusion that the dispositions were not intended to be short sales, the Board relied upon the testimony of certain employees of taxpayer's broker. Considering the statements of these men in the light of their duties, the findings are unsupported. The particular function of a stock-clerk must be appraised in weighing his testimony and if a customer's long account had sufficient number of shares, deliveries were made out of that stock. As a stock-clerk he was concerned only with the net position of the broker. From his testimony it cannot be said that the broker did not use borrowed stock to make deliveries on short sales. Nor can his testimony have any bearing upon taxpayer's intention other than through his admission that the sales were treated as short sales for bookkeeping purposes. A dividend-clerk testified that he collected dividends only on the amount that the long stock exceeded the short. His concern with taxpayer's net position was because it was his function to collect an amount equivalent to dividends on the broker's net holdings from the broker's correspondent in New York, who in turn would collect dividends from the corporation. But this evidence does not refute the actual entries in the customer's ledger crediting dividends on the long accounts and charging dividends on the short. Nor can any more be said for the testimony of a margin-

---

[1] DuPont v. Com'r, 3 Cir., 98 F.2d 459, certiorari denied, 305 U.S. 631, 59 S.Ct. 97, 83 L.Ed. 405; Du Pont v. Com'r, 3 Cir., 110 F.2d 641, certiorari denied, 311 U.S. 657, 61 S.Ct. 11, 85 L.Ed. 421.

clerk who stated that none of the sales tickets bore the words "short sales." The absence of this designation is not determinative since it does not appear that sales concededly short were so labeled.

 The correct resolvement of the Board's alternative holding is difficult. The Board found that the taxpayer, a housewife, had an office at her home where she employed a broker's customer's man as secretary and bookkeeper. She spent an average of an hour a day there. From that office she studied stock market reports and periodicals and on the basis presumably of these studies bought and sold large blocks of stock. These purchases and sales amounted to over 338,000 shares in 1932, 101,000 shares in 1933, 33,635 shares in 1934 and 53,000 shares in 1935. This led it to the conclusion that she was "carrying on any trade or business" and so entitled to a deduction for "all the ordinary and necessary expenses paid or incurred."[2]

It is apparent that there are two conceptions possible as to, first, the meaning of the words "trade or business" and, second, the character of the determination that such meaning has been achieved. As to the former, the question is really whether the word "trade" dominates the word "business" or vice versa. From the dictionary it will be noticed that the terms are somewhat interchangeable.[3] Legally, business has been defined as activity[4] for profit[5] or as

activity for profit by service to the general public. Mr. Justice Frankfurter has given this last definition expression in his concurring opinion in Deputy v. DuPont: "* * * To avail of the deductions allowed by § 23(a), it is not enough to incur expenses in the active concern over one's own financial interest. '* * * carrying on any trade or business', within the contemplation of § 23(a), involves holding one's self out to others as engaged in the selling of goods or services. This the taxpayer did not do. Expenses for transactions not connected with trade or business, such as an expense for handling personal investments, are not deductible. * * *" 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L. Ed. 416.[6] We confess that the conception of the learned Justice above quoted appeals to us. It has its analogy in the interpretation of the "Commercant"[7] of the Bankruptcy Codes of the civil law countries and the trader of our[8] and the early English[9] bankruptcy laws. In a footnote to the leading textbook on French bankruptcy, we find a summary of certain decisions factually directly applicable to the principal case. The note reads: "So one who engages in stock exchange operations not constituting the practice of a profession is not a merchant and cannot be accordingly declared a bankrupt." Translation: Lyon-Caen, and Renault,[10] 7 Traite de Droit Commercial, note 5, p. 49. After all, the deduction is an act of grace. If carrying on a trade or

---

[2] 26 U.S.C.A.Internal Revenue Code, § 23(a).

[3] Trade: "A line of work or a form of occupation pursued as a business or calling, as for a livelihood or for profit; anything practiced as a means of getting a living, money, booty, etc.; mercantile or commercial business in general, or the buying and selling, or exchanging, of commodities, either by wholesale or retail within a country or between countries." 2 New Century Dictionary p. 2022.

Business: "That with which one is busy or occupied * * * a matter of habitual concern or interest; one's occupation, profession, or trade; also action which requires time, attention, and labor. * * *" 1 New Century Dictionary, p. 187.

[4] "This word (business) embraces everything about which a person can be employed." Black, Law Dictionary, 2d Ed. 1910.

[5] "That which occupies the time, attention, and labor of men for the purpose

of a livelihood or profit." Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, Ann.Cas.1912B, 1312.

[6] Cf. "Business Expenses" in Income Tax Deductions, 13 Temple University Law Quarterly 511, 513.

[7] See Lyon-Caen and Renault, 7 Traite de Droit Commercial, Qualite de Commercant, p. 48; Code de Commerce, Liv. III, Tit. I, Art. 437.

[8] 6 Am.Jur. p. 539, note 1.

[9] 1 Griffith's Bankruptcy, Chapter 2, Who May Be Bankrupt; Mulla, Law of Insolvency, pp. 73A, 267, 374–378.

[10] "Ainsi, celui qui se livre a des operations de bourse ne constituant pas l'exercice d'une profession n'est pas commercant et ne peut pas, par suite, etre declare en faillite: Trib. comm. Marseille, 12 decembre 1906, Journal des faillites, 1907. 383; Rouen, 28 janvier 1911, S. 1911, 2. 215; Pand. fr., 1911. 2. 225; Journal des faillites, 1911, p. 216, Paris, 15 mars 1912, Journal des faillites, 1912.

business were taken to mean any activity for profit the deduction would be broader than intended. It would be permissible wherever amounts were expended in any attempt to produce income, rather than just where the expenditures were for a trade or business.

Although we have expressed this preference for Mr. Justice Frankfurter's view, it is only fair to note that two later cases in the United States Supreme Court leave the question in some confusion. In Higgins v. Commissioner,[11] a unanimous court speaking through Mr. Justice Reed, who concurred in Mr. Justice Frankfurter's opinion, from which we have quoted, affirms the Board of Tax Appeals, 39 B.T.A. 1005, and the Circuit Court of Appeals, 2 Cir., 111 F.2d 795, both of which judicial bodies had relied entirely on the "extent, continuity, variety and regularity" theory of private investment transactions. In United States v. Pyne,[12] Mr. Justice Black, speaking for a unanimous court, criticized the definition of Flint v. Stone Tracy Co., above cited, and reversed the Court of Claims. He does so, however, not in disagreement with their theory of "extent, continuity" etc. but in difference with their finding of fact. The Board of Tax Appeals[13] and the lower Federal Courts[14] never adopted the principle later expressed by Mr. Justice Frankfurter. Since in the Higgins case the Supreme Court approved a decision that the taxpayer was not engaged in a "trade or business" and in the Pyne case the complaint was against the Court of Claim's failure to make a specific finding, these decisions do not necessarily detract from the weight of Mr. Justice Frankfurter's conception.

Under the views we have above expressed, it is not necessary for us to pass upon the character of the Board of Tax Appeals determination. Here, again the Justices of the Supreme Court seem to differ. Mr. Justice Frankfurter in Deputy v. DuPont says: "What the activities of a tax payer are is an issue for determination by triers of fact. Whether such activities constitute a 'trade or business' as conceived by § 23(a) of the Revenue Act of 1928, 45 Stat. 791, 799, is open for determination here unfettered by findings and rulings below except for the weight of the intrinsic authority of all lower court opinions." 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416.

On the other hand, Mr. Justice Reed, who concurred in the above statement, in Higgins v. Commissioner says: "* * * The Commissioner and the Board appraised the evidence here as insufficient to establish petitioner's activities as those of carrying on a business. The petitioner merely kept records and collected interest and dividends from his securities, through managerial attention for his investments. No matter how large the estate or how continuous or extended the work required may be, such facts are not sufficient as a matter of law to permit the courts to reverse the decision of the Board. Its conclusion is adequately supported by this record, and rests upon a conception of carrying on business similar to that expressed by this Court for an antecedent section." 312 U.S. 212, 218, 61 S.Ct. 475, 478, 85 L.Ed. 783.

It would be our impression that although the Board of Tax Appeals has the right, where supported by substantial evidence, to bind us by a finding that the taxpayer had spent an hour a day in her office, nevertheless the conclusion to be drawn from that fact is a legal one which is within our power fully to review.[15] The Board of Tax

---

291. Cpr. Trib. comm. Lyon, 12 juin 1910, Journal des faillites, 1911. 130. Mais voyez Paris, 6 avril 1908, S. et J. Pal. 1909, 2. 287; Pand. fr. 1909. 2. 287, Journal des faillites, 1909. 347."

Lyon-Caen and Renault, 7 Traite de Droit Commercial, Qualite de Commercant, note 5, p. 49.

[11] 312 U.S. 212, 61 S.Ct. 475, 477, 85 L.Ed. 783.

[12] April 28, 1941, 313 U.S. 127, 61 S. Ct. 893, 85 L.Ed. 1231.

[13] Ignaz Schwinn, 9 B.T.A. 1304; E. M. Elliott, 15 B.T.A. 494; Richard D. Wyckoff, 19 B.T.A. 263; William A. Hodgson, 24 B.T.A. 256; George P.

Sacks, 25 B.T.A. 415; Harriet P. Schermerhorn, 26 B.T.A. 1031; L. T. Alverson, 35 B.T.A. 482; Cornelia W. Roebling, 37 B.T.A. 82.

[14] Dart v. Com'rs, 4 Cir., 74 F.2d 845; Kales v. Com'r, 6 Cir., 101 F.2d 35, 122 A.L.R. 211; Miller v. Com'r, 9 Cir., 102 F.2d 476; Marsch v. Com'r, 7 Cir., 110 F.2d 423; Expense Deductions Allowed in Determining An Investor's Taxable Income, 27 Virginia Law Review 349.

[15] Brown, Judicial Review in Taxation, 27 Georgetown Law Journal 37: Cf. The distinction between primary and ultimate facts, 5 Paul and Mertens Law of Federal Income Taxation § 44.11.

Appeals here can only distinguish its own conclusion in the Higgins case by calling the stock dealings speculative rather than investive because of their size and frequency. Taxpayer Higgins had not only one but two offices (one in Paris) and employed not one secretary but several. He was mainly interested, however, in just conserving and enhancing his own estate. In the present case, as in Kales v. Commissioner,[16] the taxpayer was principally "adventuring his [her] own capital in securities, yet is actively and continuously occupied in their purchase and sale." We agree with Judge Patterson that it is a difference but not one of distinction.[17] The Supreme Court gave some indication that no legal difference may be made of this factual difference when it granted certiorari in the Higgins case on the ground that the decision of the Second Circuit conflicted with Kales v. Commissioner.[18]

Since taxpayer sought the tax advantages of selling short while holding the securities long, she should also bear the burdens. The Commissioner's determination of a deficiency on the ground that the dividends credited to her long account could not be offset by dividends charged against her short stock should be upheld. The dividend charges on the short stock were in the nature of capital expenditures and may not be deducted until the taxpayer covers the short sale. When the transaction is thus completed the dividends may be added to her cost basis.

The Board of Tax Appeals also allowed the taxpayer to deduct the commission paid to her brokers on sales of securities and commodities. Such deductions were unauthorized in view of our holding that taxpayer was not engaged in the trade or business of security investment.[19]

The decision of the Board of Tax Appeals is reversed.

---

[16] 6 Cir., 101 F.2d 35, 38, 122 A.L.R. 211.

[17] "The result we have reached is not to be reconciled with Kales v. Commissioner," Higgins v. Commissioner, 2 Cir., 111 F.2d 795, 797.

[18] See Higgins v. Commissioner, 312 U. S. 212, 215, 61 S.Ct. 475, 85 L.Ed. 783.

[19] The deductions were permitted in Winmill v. Commissioner, 2 Cir., 93 F. 2d 494 and Neuberger v. Commissioner, 2 Cir., 104 F.2d 649 because the taxpayers were found to be engaged in purchasing and selling securities as a business. In Spreckels v. Commissioner, 9 Cir., May 15, 1941, 119 F.2d 667, the deductions were disallowed because the Court could find no distinction between commission on purchases which have been held nondeductible by the Supreme Court in Helvering, Commissioner v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 and those paid on sales.