## COMMISSIONER OF INTERNAL REVENUE v. WIESLER.

### No. 10381.

Circuit Court of Appeals, Sixth Circuit.

June 3, 1947.

Harry Baum, of Washington, D. C. (Sewall Key, J. Louis Monarch, and Norman S. Altman, all of Washington D. C., on the brief), for petitioner.

R. M. O'Hara, of Detroit, Mich. (R. M. O'Hara, and W. F. Robinson, both of Detroit, Mich., on the brief), for respondent.

Before SIMONS, MARTIN, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Commissioner of Internal Revenue seeks a review of decisions of The Tax Court of the United States which in effect permitted the respondent taxpayer, Norbert H. Wiesler, in making income tax returns, to deduct as an expense under Section 23(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a), amounts, equivalent to dividends, charged to him on shares of stock borrowed for making delivery on short sales of said stock.

The stipulated facts are set out in detail in the findings of fact and opinion of the Tax Court in Wiesler v. Commissioner, 6 T.C. 1148. For the purposes of this opinion, they may be summarized as follows: During the years 1936, 1937, 1939 and 1940, being the taxable years involved, the petitioner was engaged in the business of trading in securities. He opened several accounts with a stock brokerage firm. One of these accounts, Account No. 2, was used exclusively for making short sales of General Motors Common stock. Another account, designated Collateral Account, was opened for the purpose of depositing securities as collateral for Account No. 2 and other accounts. When the Collateral Account was opened in 1932, the taxpayer made an initial deposit therein of 10,000 shares of General Motors common stock, but these securities were not used to cover short sales in Account No. 2. In accordance with established brokerage practice, the brokers credited to the taxpayer in the Collateral Account the dividends payable on shares

in that account, and charged to the taxpayer in Account No. 2 the dividends payable on shares in that account in which the taxpayer was short on dividend dates.

In his income tax returns for the years 1936 and 1937 the taxpayer offset the dividends charged against him in Account No. 2 against the dividends credited to him in the Collateral Account, and reported as dividend income in each year only the excess of the dividends credited in the Collateral Account over the dividends charged in Account No. 2. In his returns for 1939 and 1940 he reported as income the dividends credited to him in his Collateral Account, less the portion thereof credited on account of borrowed shares which he had deposited in the account, and he claimed as deductions against gross income in the returns of 1939 and 1940 the dividends charged against him in those years in Account No. 2. The Commissioner considered the dividends credited to the Taxpayer in the Collateral Account less those on borrowed shares as taxable income to him and disallowed as offsets or deductions the dividends charged against him in Account No. 2 for each of the years involved. This resulted in deficiency assessments of $28,505.-25 for 1936, $10,738.61 for 1937, $9,600.68 for 1939 and $24,504.01 for 1940. The Tax Court reversed these rulings, held the deductions were properly taken and ruled that there was no deficiency in the respondent's income tax for any of the years in question.

The mechanics of short sales, such as are involved in this action, are described by the Supreme Court in Provost v. United States, 269 U.S. 443, 450-452, 46 S.Ct. 152, 70 L.Ed. 352. The short seller sells securities which he does not own. He is required by the rules of the Stock Exchange to make delivery of the stock sold to the purchaser on on the next business day. Accordingly, he arranges to borrow an equal number of shares, usually from a broker, which shares are then delivered to the purchaser. The short seller deposits with the lender the full market price of the borrowed shares, and he maintains this deposit, equal to the value of such shares, until the borrowed shares are returned. He may or may not receive interest on this deposit, depending upon the agreement. The short seller completes the transaction by purchasing at a later time the stock which he borrowed and by delivering such purchased stock to the lender. During the period that the seller is "short", his loan contract requires him to give the lender all the benefits which the lender would have received if he had retained the stock and, accordingly, when dividends are declared on the stock the short seller must pay to the lender an amount equal to such dividends. The taxpayer in the present case made such payments on his borrowed stock, as dividends were declared and paid on the stock. The proper treatment of such payments for income tax purposes is the question involved.

Section 23(a) (1) of the Internal Revenue Code, which was applicable to the tax years in question, provides that in computing net income there shall be allowed as deductions "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." The taxpayer contended, and the Tax Court held, that the payments in question in the present case were properly deducted under this section of the Code. The petitioner contends that such amounts were not ordinary and necessary expenses incurred in carrying on a trade or business, but that such payments should be treated as part of the cost basis of the stock subsequently acquired to cover the taxpayer's short position. Since gains or losses from short sales of property are considered as gains or losses from sales of capital assets, [§ 117(g) (1) Title 26 U.S. C.A. Int.Rev.Code], and losses from sales of capital assets are limited in amount, [§ 23(g) (1) and § 117(d) (2) Title 26 U. S.C.A. Int.Rev.Code], the Commissioner's view of the transaction would limit such payments as deductions. They could be claimed by the taxpayer in full if they are considered as ordinary and necessary expenses. The Tax Court followed the ruling of the Court of Appeals for the Fourth Circuit in Dart v. Commissioner, 74 F.2d 845, and its own ruling in W. Hinckle Smith v. Commissioner, 44 B.T.A. 104. In doing so it recognized, however, that contrary conclusions had been reached in Commissioner v. Levis' Estate, 2 Cir., 127 F.2d 796, 142 A.L.R. 1146, certiorari denied 317

U.S. 645, 63 S.Ct. 38, 87 L.Ed. 520, and in Helvering v. Wilmington Trust Co., 3 Cir., 124 F.2d 156, reversed on other grounds, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352. The petitioner relies upon these decisions from the Second and Third Circuits, and also upon Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52, and Spreckels v. Helvering, 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073.

In the Winmill case the Supreme Court held that brokerage commissions paid in the purchase of stocks were not deductible as business expenses but were added to the cost basis of such securities. In the Spreckels case the Court held that commissions paid in selling securities was not business expense, but was an offset against the selling price. The applicability of those decisions to the present issue is very doubtful. They follow the well settled rule that expenditures incurred as an incident to the *acquisition* or *sale* of property are not ordinary and necessary business expenses, but are capital expenditures which must be added to the cost of the property or deducted from the proceeds of sale. The charges in the present case were not incurred as an incident either to the acquisition or sale of the property involved, but are more in the nature of carrying charges incurred during the progress of the deal between the time of sale and the time of purchase. They closely resemble such charges as interest on borrowed money and safety storage charges in holding securities when a "long" transaction is involved, which have been recognized as expenses of doing business. While what the short seller pays is not technically interest, yet it is an expense necessary to his obtaining and using the stock. In Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416, the Court had a case involving dividend payments on short sales, and the opinion referred to the ruling of the 4th Circuit in Dart v. Commissioner, supra, with implied approval, although the decision did not involve a ruling on that issue. Both the Winmill ruling and the Speckels ruling were based chiefly upon a Treasury regulation, which provided that commissions paid in purchasing securities are a part of the cost price of such securities and that com-missions paid in selling securities are an offset against the selling price. In any event, we pass to what we consider the controlling principle on this review.

We recognize the conflict between the ruling in the Dart case and the rulings in the Wilmington Trust Co. case and the Levis' Estate case. We do not believe it is necessary to choose between them in disposing of the present review, as the ruling of the Tax Court should be affirmed under the rule announced in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 247, 88 L.Ed. 248. It was there stated that Appellate Courts should not consider and review as questions of law those matters which really are disputes over proper tax accounting, that the decision of the Tax Court is final if it has a "warrant in the record" and "a reasonable basis in the law," and "Where no statute or regulation controls, the Tax Court's selection of the course to follow is no more reviewable than any other question of fact." The present case is essentially one of proper tax accounting and administration. No statute or regulation controls the determination of the question. No question of statutory construction is involved, nor does the ruling turn on the meaning of specific words found in the statute, as was the case in Trust of Bingham v. Commissioner, 325 U.S. 365, 371, 65 S.Ct. 1232, 89 L.Ed. 1670. The broad scope of the Dobson rule has been shown by the later decisions in Commissioner v. Scottish American Co., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113, and in John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278. The John Kelley Co. case appears particularly applicable. The question involved was whether payments made under certain corporate obligations were interest or dividends. Conflicting decisions of the Tax Court in cases involving similar facts were both upheld, the Court holding that it was reasonably possible to reach the conclusion that the payments were interest to creditors in one case and dividends to stockholders in the other case. In those cases the Tax Court was deciding whether the payments in question were "interest" or "dividends," as those words were used in the tax statute. In the present case, the

Tax Court was deciding whether the payments involved were "ordinary and necessary expenses," as those words were used in the tax statute. In both cases the words were well understood words which needed no further definition, or construction by the Court. John Kelley Co. v. Commissioner, supra, 326 U.S. at page 530, 66 S.Ct. 299. Compare also: McDonald v. Commissioner, 323 U.S. 57, 64, 65 S.Ct. 96, 89 L.Ed. 68, 155 A.L.R. 119; Choate v. Commissioner, 324 U.S. 1, 65 S.Ct. 469, 89 L.Ed. 653; Commissioner v. Wemyss, 324 U.S. 303, 307, 65 S.Ct. 652, 89 L.Ed. 958, 156 A.L.R. 1022.

In both the Wilmington Trust Co. case and the Levis' Estate case the Circuit Court of Appeals reversed the ruling of the Board of Tax Appeals, but both of those cases were decided before the ruling in Dobson v. Commissioner, supra. Although the ruling of the Board of Tax Appeals in the Levis' Estate case was reversed by the Circuit Court of Appeals, yet the Tax Court has subsequently adhered to its own ruling that dividends paid on stock sold short constitute deductible business expenses. In addition to the W. Hinckle Smith case, supra, decided before the reversal in the Levis' Estate case, and its ruling in the present case, decided May 24, 1946, similar rulings were made in the cases of Arthur J. Neumark, 46 B.T.A. 1282; F. A. Wilson, 1 T.C. 1217; F. A. Wilson, July 24, 1945, 7 T.C. —; and Guy M. Peters, November 22, 1946, 7 T.C. —. This continued adherence of the Tax Court to its own views in the matter, irrespective of the continuing conflict between it and the Second and Third Circuits, shows independent exercise of its judgment in the matter, is convincing that there is a rational basis for its conclusions, and that the most that can be said for the petitioner in the present case is that there is a reasonable difference in legal opinion respecting the proper treatment for income tax purposes of the payments involved in this case. Since the decision of the Court of Appeals of the Second Circuit in the Levis' Estate case, that Court seems to have taken the position that such a reasonable difference in legal opinion is to be resolved in subsequent cases in favor of the ruling of the Tax Court. Brooklyn National Corporation v. Commissioner, 2 Cir., 157 F.2d 450, 452.

The orders of the Tax Court now under review are accordingly affirmed.

SIMONS, Circuit Judge, concurs in the result.