EMPIRE PRESS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70701. Filed October 26, 1960.

*Julian L. Yesley, Esq.*, for the petitioner.
*Raymond T. Mahon, Esq.*, for the respondent.

WITHEY, *Judge:* The Commissioner has determined a deficiency of $20,875.40 in the petitioner's income tax for 1955. The issues for determination are the correctness of the respondent's action (1) in disallowing a deduction of $18,445 taken as a dividends-received deduction and (2) in disallowing a deduction of $21,700 taken as a dividend paid on a short sale of corporate stock.

FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

The petitioner is an Illinois corporation organized in 1941 and has its principal place of business in Chicago, Illinois. It filed its Federal income tax return for 1955 with the district director of internal revenue in that city.

The petitioner is and during 1955 was engaged in the printing business. Although it conducts business in States other than Illinois, it has no place of business in any of those States. At all times pertinent herein, Abraham Zimmerman, sometimes hereinafter referred to as Zimmerman, was manager of petitioner and his wife owned 98 per cent of petitioner's outstanding capital stock.

On December 13, 1955, Western Maryland Railway Corporation, sometimes hereinafter referred to as Western Maryland, voted to pay a dividend of $108.50 per share on its 7% First Preferred stock, sometimes hereinafter referred to as Western Maryland stock. The dividend was payable on December 28, 1955, to holders of record of the stock on December 23, 1955. The stock was listed on the American Stock Exchange and went ex-dividend on December 20, 1955. The respondent concedes that the amount payable of $108.50 per share of the stock constituted a "dividend" as that term is defined in the Internal Revenue Code of 1954.

On or prior to December 13, 1955, Zimmerman heard a discussion in Chicago between some of his friends to the effect that a large dividend was going to be paid on Western Maryland stock and that because of the tax savings which might be effected it would be wise for corporations to sell the stock short at that time. Subsequently he discussed with his wife the matter of the tax saving to petitioner that might result from a short sale by it of some of the stock.

Zimmerman was in Boston, Massachusetts, on December 14, 1955. He had gone to Boston with the idea of effecting a short sale by petitioner of some Western Maryland stock and contacted a personal friend, J. Benn Keizer, who was associated with Keizer & Company, sometimes hereinafter referred to as Keizer Company. That company was a registered broker-dealer having its principal place of business in Boston. Zimmerman informed Keizer that he had heard that corporations were making short sales of stocks on which large dividends were about to be paid, that he thought it was a good method

by which the petitioner could save taxes and asked Keizer if he would handle such a transaction for petitioner with respect to 200 shares of Western Maryland stock. Keizer replied that he would and that it was a type of transaction that was being entered into by many brokers.

After a discussion between Zimmerman and Keizer as to how the transaction would be executed, the following procedure or plan was agreed upon:

(1) The petitioner would sell short to Keizer Company 200 shares of Western Maryland stock with the dividends on.

(2) Immediately thereafter the petitioner would cover the short sale by purchasing a like amount of the same stock with the dividends on.

(3) Since a like amount of Western Maryland stock would be involved in both petitioner's short sale and its subsequent purchase, the petitioner would both receive and pay out dividends on the stock in like amounts.

Pursuant to the foregoing plan, the following series of transactions between petitioner and Keizer Company occurred during the period December 14 through December 29, 1955:

On December 14, 1955, the petitioner made a short sale to Keizer Company of 200 shares of Western Maryland stock with dividends on at a price of $276 per share, the net total sales price being $55,188 after deducting a tax of $12.

The following day, December 15, 1955, the petitioner covered the foregoing short sale by buying from Keizer Company 200 shares of Western Maryland stock with dividends on at a price of $288 per share or at a total purchase price of $57,600. December 21, 1955, was fixed as the settlement date for the purchase. The purchase was made on December 15, 1955, in pursuance of the plan and in order to fix the amount of the petitioner's loss and to prevent greater loss from a further increase in the market price of the stock.

On December 19, 1955, the petitioner sent to Keizer Company a check in the amount of $39,200 as a deposit on account of the short sale it made to that company on December 14, 1955.

On December 28, 1955, Keizer Company sent to petitioner a check in the amount of $15,000 on account.

Also, on December 28, 1955, Keizer Company sent to petitioner a check in the amount of $21,700 to cover the dividends on the 200 shares of Western Maryland stock which the petitioner had purchased from that company on December 15, 1955. On December 28, 1955, the petitioner sent to Keizer Company a check in the amount of $21,700 to cover the dividends on the 200 shares of Western Maryland stock which the petitioner had sold short to that company on December 14, 1955.

On December 29, 1955, Keizer Company sent to petitioner a check in the amount of $21,688 to balance the petitioner's account after the conclusion of the foregoing transactions.

Selling prices per share of Western Maryland stock on the American Stock Exchange on the indicated dates were as follows:

|  | High | Low | Close |
|---|---|---|---|
| Dec. 14, 1955 | $278 | $275 | $277½ |
| Dec. 15, 1955 | 288 | 280 | 285 |

No shares of Western Maryland stock were transferred into the name of the petitioner nor was any certificate for such stock delivered to petitioner in effecting or in pursuance of the above-mentioned transactions between the petitioner and Keizer Company nor was any such transfer or delivery contemplated by the parties.

Zimmerman never investigated the financial integrity and soundness of Western Maryland prior to causing petitioner to enter into the transactions involved herein. It was because he had heard the discussion in Chicago about the Western Maryland stock that such stock was the subject of the transactions between petitioner and Keizer Company. If a stock other than Western Maryland stock had been discussed, Zimmerman would have selected that stock as the subject of the transactions between the petitioner and Keizer Company.

The minutes of the meetings of the stockholders and directors of the petitioner fail to disclose any authorization for the petitioner to engage in the stock transactions involved herein. Other than the Western Maryland stock in issue the petitioner has never purchased any corporate stock. The petitioner's sole purpose in entering into the stock transaction here in controversy was for saving tax.

During 1955 Keizer Company had other clients who entered into securities transactions with it similar to those here in issue.

Western Maryland is a domestic corporation subject to taxation under chapter 1 of the Internal Revenue Code of 1954.

In its income tax return for 1955 the petitioner reported a short-term capital loss of $2,412 as having been sustained on the sale of 200 shares of Western Maryland stock shown as having been acquired on December 21, 1955, at a cost of $57,600 and sold on December 14, 1955, for $55,188. No deduction was taken by petitioner on account of the reported loss. The petitioner also reported in its return as income the amount of $21,700 as representing dividends received on 200 shares of Western Maryland stock. Included in the item of "Other Deductions" taken on the return was the amount of $21,700 explained as dividends paid on a short sale. The petitioner further took as a dividends-received deduction the amount of $18,445, representing 85 per cent of the $21,700 reported as dividends received.

In determining the deficiency the respondent determined that the $18,445 taken as a dividends-received deduction was not allowable under section 243 of the Internal Revenue Code of 1954 and that the deduction of $21,700 taken as dividends paid on a short sale was not allowable under sections 161 and 265 of the 1954 Code and accordingly disallowed each of the deductions. However, the respondent made no adjustment with respect to the amount of $21,700 reported by the petitioner as income received as dividends on Western Maryland stock.

OPINION.

The questions presented are whether as a result of its transactions with Keizer Company the petitioner is entitled to a deduction of $18,445 taken as 85 per cent of a dividend received on Western Maryland stock and a deduction of $21,700 taken as a dividend paid on the short sale of Western Maryland stock. As the Supreme Court has said, deductions are a matter of legislative grace and a taxpayer seeking a deduction must be able to point to a statute which provides for the allowance of the deduction and show that he comes within the terms of that statute. *New Colonial Co.* v. *Helvering*, 292 U.S. 435; *Deputy* v. *du Pont*, 308 U.S. 488; *Interstate Transit Lines* v. *Commissioner*, 319 U.S. 590.

The petitioner points to the provisions of sections 162(a) and 243(a) of the 1954 Code [1] as providing for the allowance of the respective deductions in question. Section 243(a) of the Code provides in the case of a corporation for the allowance as a deduction of an amount equal to 85 per cent of the amount received during the taxable year as dividends from a domestic corporation which is subject to taxation under chapter 1 of the Code. Section 162(a) provides for the allowance as a deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

To show that it comes within the foregoing provisions of the Code, the petitioner relies on its transactions with Keizer Company. It contends that although a tax-saving motive was involved, the prices at which the sale and the purchase of the Western Maryland stock were made were consistent with the prices prevailing on the stock exchange for that stock on the respective dates of the sale and the purchase, that although the transactions eventuated in a loss, there was a possibility

---

[1] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

SEC. 243. DIVIDENDS RECEIVED BY CORPORATIONS.

(a) GENERAL RULE.—In the case of a corporation, there shall be allowed as a deduction an amount equal to 85 percent of the amount received as dividends (other than dividends described in paragraph (1) of section 244, relating to dividends on the preferred stock of a public utility) from a domestic corporation which is subject to taxation under this chapter.

of profit at the time they were entered into, that there was no deviation from the ordinary procedure followed in transactions of the type involved, and that the transactions were in accord with business or economic reality.

The respondent takes the position that the petitioner's dealings with Keizer Company were formulated and executed solely for tax-saving purposes, that they were without substance, and that they should be disregarded for income tax purposes.

At this point it is observed that Zimmerman, who was manager of the petitioner and who represented it in its transactions with Keizer Company, appeared as a witness for the respondent at the trial herein and testified that the only purpose of the petitioner in entering into the transactions was for tax saving. Accordingly, we have made a finding that such was the petitioner's only purpose.

The petitioner was engaged in the printing business. However, it has made no attempt to relate its transactions with Keizer Company to its business. Nor has petitioner shown any basis for a reasonable expectation at the time it entered into such transactions that they would result in a profit.

The petitioner's transactions with Keizer Company were executed pursuant to a prearranged plan. In carrying out the plan, checks in substantial amounts passed between petitioner and Keizer Company during the period December 19 through December 29, 1955. Except for the plan, the petitioner, on December 15, following the purchase of 200 shares of Western Maryland stock from Keizer Company to cover its short sale on the previous day of the same amount of the stock to that company, could have immediately discharged its liability to that company by making payment to it of $2,412, the sum which was then ascertainable that the petitioner would be and actually was out of pocket when all the transactions under the plan were completed on December 29, 1955.

Under the plan, Keizer Company, on December 28, 1955, sent petitioner a check for $21,700 to cover the dividends on the 200 shares of Western Maryland stock the petitioner had purchased from that company and on the same day petitioner sent Keizer Company a check in the same amount to cover dividends on the petitioner's short sale of 200 shares of Western Maryland stock to Keizer Company. In substance the foregoing was merely an exchange of checks the result of which was that the petitioner never received any amount of dividends on Western Maryland stock which it was permitted to retain. In fact, under the plan and before any dividend was paid, the petitioner was committed to pay Keizer Company a sum equal to the dividend on 200 shares of Western Maryland stock.

The record shows that no certificate for 200 shares, or any other amount, of Western Maryland stock was ever delivered to the peti-

tioner and that no Western Maryland stock was ever transferred into petitioner's name. Furthermore, the record does not show that at any time during the period December 14 through December 29, 1955, Keizer Company owned any Western Maryland stock or was obligated under the plan with the petitioner to acquire any. To the extent shown by the record it may well be that the plan contemplated that petitioner would, as it did, make a short sale to Keizer Company and that the petitioner's purchase from Keizer Company to cover the short sale would represent a short sale by Keizer Company to the petitioner. If such was the case and since the record fails to show that it was not, it may fairly be concluded that the transactions between the petitioner and Keizer Company were mere paper transactions without substance and that the sale and purchase confirmations sent by Keizer Company to petitioner, the exchange of checks by petitioner and Keizer Company, and the bookkeeping entries flowing therefrom were made solely to give color to the transactions.

From a consideration of the record in the light of what has been said above, we are of the opinion that the petitioner has failed to show, as required by the *New Colonial Co.*, *du Pont*, and *Interstate Transit Lines* cases, that it comes within the terms of the provisions of the Code relied on by it. Accordingly, the respondent's disallowance of the deductions in controversy is sustained.

The petitioner points out that it reported as income an amount of $21,700 as representing dividends received from Western Maryland stock and that although the respondent disallowed the deductions controverted herein, he included the $21,700 in income in determining the deficiency. Petitioner contends that it is inconsistent to include the $21,700 in income and disallow the deductions taken with respect thereto. Since we have sustained the respondent's disallowance of the deductions in question and in the absence of any contention of the respondent to the contrary, we hold that the $21,700 is to be eliminated from petitioner's income in a recomputation of the deficiency.

*Decision will be entered under Rule 50.*