**William P. DOYLE and Crystal Gibson Doyle, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 13115.**

United States Court of Appeals Seventh Circuit.

Feb. 8, 1961.

Petition to Modify Opinion Denied March 10, 1961.

Leonard L. Cowan, Chicago, Ill., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lloyd J. Keno, Attorney, U. S. Department of Justice, Washington, D. C., Abbott M. Sellers, Acting Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Crombie J. D.

Garrett, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, DUFFY, Circuit Judge, and PLATT, District Judge.

HASTINGS, Chief Judge.

Petitioners[1] William P. Doyle and Crystal Gibson Doyle, his wife, ask us to review a decision of the Tax Court of the United States entered on June 20, 1960, Docket No. 69630. The memorandum findings of fact and opinion of the Tax Court are not officially reported.

The Tax Court held that petitioners were not entitled to deduct a loss of $14,-770.31 on the sale of certain shares of stocks and therefore had erroneously overstated long-term capital losses in that amount in their 1953 income tax return. Accordingly, an income tax deficiency for the year 1953 in the amount of $3,840.28 was assessed.

The ultimate issue for determination is whether losses sustained by taxpayer are deductible under Section 23(e)(2) of the Internal Revenue Code of 1939[2] as contended by taxpayer, or are excluded under Section 118(a)[3], as held by the Tax Court. Other related sub-issues will be hereinafter referred to and considered.

The facts were stipulated and are not in dispute. We are concerned only with questions of law. It is stated by both parties that this is a case of first impression.

The relevant statutory provisions and regulations provide in pertinent part as follows:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(e) *Losses by individuals.* In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\* \* \* \* \* \*

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*."

"§ 118. Loss from wash sales of stock or securities

"(a) In the case of any loss claimed to have been sustained from any sale or other disposition of shares of stock or securities where it appears that, within a period beginning 30 days before the date of such sale or disposition and ending 30 days after such date, the taxpayer has acquired (by purchase or by an exchange upon which the entire amount of gain or loss was recognized by law), or has entered into a contract or option so to acquire, substantially identical stock or securities, then no deduction for the loss shall be allowed under section 23(e)(2); \* \* \*."

Treas. Reg. 118, § 39.118–1 (1953):

"(a) A taxpayer cannot deduct any loss claimed to have been sustained from the sale or other disposition of stock or securities if, within a period beginning 30 days before the date of such sale or disposition and ending 30 days after such date (referred to in this section as the 61-day period) he has acquired (by purchase or by an exchange upon which the entire amount of gain or loss was recognized by law), or has entered into a contract or option so to acquire, substantially identical stock or securities. \* \* \*

"(f) The word 'acquired' as used in this Section means acquired by purchase or by an exchange upon which the entire amount of gain or loss was recognized by law. \* \* \*."

---

1. William P. Doyle is a party solely because he joined his wife, Crystal Gibson Doyle, in filing a joint tax return for 1953. Crystal Gibson Doyle will be referred to herein as taxpayer.

2. 26 U.S.C.A. § 23 (1952 ed.).

3. 26 U.S.C.A. § 118 (1952 ed.).

Treas. Reg. 118, § 39.117(g)–1 (1953), reads:

"(a) *For income tax purposes,* a short sale is not deemed to be consummated until delivery of property to cover the short sale, * * *. If the short sale is made through a broker and the broker borrows property to make delivery, the short sale is not deemed to be consummated until the obligation of the seller created by the short sale is finally discharged by delivery of property to the broker to replace the property borrowed by the broker." (Emphasis added.)

The pertinent facts as found by the Tax Court, based upon the stipulation of facts, can be summarized as follows:

"In January and February 1953, the petitioner purchased the following common stocks for the amounts stated:

| | |
|---|---|
| 700 shares Southern Pacific | $31,338.13 |
| 2,000 shares Avco Manufacturing Co. | 16,487.34 |
| 1,000 shares Sunshine Mines | 10,753.81 |

"On or before November 27, 1953, she deposited these stocks with her broker with instructions that they be used as collateral in her margin account to cover purchases on margin ·of the same number of shares of the same stocks to be made on or shortly after such date and then used on December 30, 1953, to cover short sales on the same number of shares of the same stocks.

"On November 27 and 28, 1953, she purchased 700 shares of Southern Pacific, 2,000 shares of Avco Manufacturing and 1,000 shares of Sunshine Mines common stock. The cost of these purchases was secured by the shares deposited as collateral in her margin account. At the same time she sold, by means of short sales, the same number of shares of the same stocks at the same market prices.

"The cost of the stock purchased on November 27 and 28, 1953, was shown by her broker as a debit balance in her long account. The sales price received on the short sales of the same dates was shown as a credit balance in her short account.

"On December 30, 1953, pursuant to the petitioner's instructions, the broker covered the short sales with the deposited shares which had theretofore been held as collateral in her margin account to cover the shares purchased at the same time as the short sales. Her broker then closed the credit balance in the short account to the debit balance in the long account.

"Thereafter the petitioner held stock certificates representing the shares purchased on November 27 and 28, 1953. She had no out-of-pocket expenses from the dealings described except for broker's fees. She entered into the transactions of November and December 1953 with the intention of maintaining her investment position in the stocks named.

"It is stipulated that the use of the term 'short sales' where it appears above, refers to sales made by the petitioner which were consummated by the delivery of stock certificates borrowed by the petitioner from her broker.

"On their return for 1953 the petitioners reported net income of $30,-452.42, including $3,606.06 as excess of long-term capital gains over losses. They reported long-term capital gains of $42,316.28 and long-term capital losses of $38,710.22. The losses claimed included $14,770.31 claimed on account of transactions in stocks of the three corporations described above.

"The respondent determined that the petitioners had erroneously overstated long-term capital losses in the amount of $4,770.31 [$14,770.31]."

Before the Tax Court and in this appeal, the Commissioner has advanced three separate arguments to disallow the loss deduction. First, the factual arguments that both the stipulation entered into by taxpayer and taxpayer's conduct indicate that her short sale was a wash sale within the terms of Section 118 of the 1939 Code. Second, the legal argument that the term "sale" as used in Section 118—the wash sale provision—must be interpreted so as to modify established practice which fixes the closing of a short sale as the effective date of that sale for tax purposes. This interpretation is contended to be consonant with Congressional intent. Third, that in any event, taxpayer's loss—which was a part of a transaction in which taxpayer simultaneously sold short and bought long an identical quantity of stocks—lacked economic substance and was therefore not "incurred in [a] transaction entered into for profit" as required by Section 23(e) (2) of the Code.

The Tax Court decided the case on the first, most narrow, factual grounds. As part of the stipulation of facts in this case, it was stated that the term "short sale" referred to sales made by taxpayer "which were consummated by the delivery of stock certificates borrowed by [taxpayer] from her broker." The Tax Court felt that taxpayer "may have stipulated herself out of the question"; for if the short sale was completed ("consummated") by the delivery of stock certificates on November 27 and 28, 1953, then the "sale" was made almost concurrently with the long purchase of November 27 and 28, bringing the wash sale restrictions squarely into play.

■ We hold that the Tax Court erred in determining on the basis of the stipulation that the short sale was completed on November 27 and 28. It is most unlikely that taxpayer intended to stipulate a meaning of the word "consummate" that was contrary to established practice in short sales and moreover would have foreclosed any possibility of obtaining the deduction she was requesting. Further, the Commissioner, in his brief,

does not emphasize the stipulation argument, but urges other, more broad grounds, supra, as the basis for disallowing the deduction.

But even if the stipulation did not establish a "sale" on the 27th and 28th, the Tax Court felt that there was a "disposition" on those dates within the terms of Section 118. This alternative factual ground on which the Tax Court disallowed the capital loss was that taxpayer delivered to her broker the 2700 shares of stock (purchased in January and February, 1953) which were *first* to be used as collateral in the long purchases of November 27 and 28 and *then*, on December 30, were to be used to cover the short sales of November 27 and 28.

■ The meaning of "disposition" in Section 118 has not been made more precise by regulations issued by the Commissioner. Nor has either party cited cases which define the meaning of the term in this section. We hold that taxpayer here did not so divest herself of control of the original 2700 shares of stock and of the transactions as a whole so as to complete the short sale. There is no showing that taxpayer was precluded from substituting other collateral for the protection of the broker had she chosen to do so or that she could not exercise any other control over these shares consistent with the purposes for which she originally hypothecated them.

■ The second argument of the Commissioner is that Section 118 must be interpreted so that the date of entering into a short sale contract is the date of "sale" from which prospectively and retrospectively the two thirty-day wash sale restrictions run. Specifically, the Commissioner, in his brief, stated:

"It is submitted that Congressional intention in this case can be implemented only through interpreting Section 118(a) as prohibiting losses incurred on short sales of stock where substantially identical stock is purchased within a period beginning thirty days before and ending thirty days after the date of the short sale

and not the date the short sale was covered."

The result of the Commissioner's interpretation would be that November 27 and 28 are the effective dates of the short sale for tax purposes in the wash sale provisions. Taxpayer correctly points out that, considered alone, a short sale is completed on the date the sale is *covered*, not at the time the order for the sale was entered into. That is, considering the short sale alone, the loss on the stock purchased in January and February, 1953 would be determined on the date that such stock was used to cover the short sales of November 27 and 28. Taxpayer contends it is established practice in the securities market to consider the closing date of a short sale as the effective date for tax purposes. Such practice follows the Commissioner's regulation, cited above, that "[f]or income tax purposes, a short sale is not deemed to be consummated until delivery of property to cover the short sale." Taxpayer applies this concept, which fixes the date of completion of the short sale as December 30, to the wash sale provisions. His long purchase of 2700 shares of stock was on November 27 and 28; the sale of the original 2700 shares was completed on December 30, thereby making inapplicable the wash sale restrictions on losses.

Taxpayer has cited numerous references to tax services that indicate this procedure is a recognized method of tax avoidance.[4] Precisely, by this means taxpayer is able to establish his capital loss on his originally-purchased stock while maintaining his investment position.

4. 5 CCH ¶ 4691, p. 40114, states:
"Since a short sale is not a sale at all for income tax purposes until it has been thus closed out, it follows that the 60 day wash sale period (from 30 days before the sale to 30 days after the sale) is counted from the time the short sale becomes a sale for income tax purposes—this is the date of delivery of the shares purchased or used to cover the short sale and not from the date of the initial transaction in the short sale."

The Commissioner contends that combining the short sale regulation as to the effective date of such sale with a literal reading of Section 118 undercuts Congressional intent manifested in passing the wash sale restrictions.

■ The issue as it faces us is one of remedies. Assuming *arguendo* that the transaction is violative of a broad Congressional intent, nevertheless, taxpayer has utilized the provisions of two well-established regulations to afford herself a capital loss when she most desires it—at a time when she reports considerable capital gains. The question is whether it is the primary responsibility of the Commissioner to issue regulations integrating his short sale provisions with the wash sale restrictions consistent with what he argues is well-established Congressional intent. Or should this court, on a piecemeal basis, make special exceptions to the regulations of the Commissioner which would be purportedly consistent with such Congressional intent? We deem it better practice here for the Commissioner to integrate the two inconsistent regulations.[5]

The Commissioner contends that if we read his short sale regulations literally and apply them to the wash sale section, we will leave open a loophole by which taxpayers may avoid the wash sale restrictions. The request that this court close the alleged loophole comes at rather a late date, because both parties concede that the type of transaction before us is well established and frequently used in the securities market place.

It is further conceded that in the many years the pertinent provisions of the

See also, Prentice Hall Tax Service ¶ 6238; 2 Federal Tax Coordinator, Research Institute of America, I–2303, I–2301; 1953, 1954 and 1955 Securities Transaction, Francis I. DuPont & Co.; American Bar Assn. Bulletin, April, 1960, p. 31; Wallace, Tax Barometer, November 7, 1959, p. 3.

5. Cf., Rev.Rul. 59–418, Internal Revenue Bulletin, p. 38 (December 28, 1959). Under the facts set out, there was no short sale of stock.

Code and the regulations in question have been in force, this is the first time the Commissioner has seen fit to challenge the validity of the transaction under scrutiny. However, it is possible that we would only be borrowing trouble for the future to interpret the section as the Commissioner urges, supra. For example, a short sale today, covered 31 days hence, with a simultaneous purchase at the time of cover, would not be a wash sale under the Commissioner's interpretation here because the purchase would be more than 30 days after the short sale was entered into. This demonstrates the vice of our tinkering on an *ad hoc* basis with the established tax practices which have long been relied on in the securities market. It is the province and the responsibility of the Commissioner to issue such regulations as will effectuate the wash sale restrictions when applied to short sales of stock. Or in the alternative, an appropriate remedy may be determined by Congressional enactment.

Finally, the Commissioner contends that the capital loss deduction on the sale of the stock purchased in January and February, 1953 and used to cover the short sale cannot be allowed because the sale in which the loss was suffered was part of a transaction wherein taxpayer repurchased an identical quantity of stocks. In this branch of his argument, Commissioner does not stress the point of time the short sale was completed (discussed in relation to the wash sale restrictions, supra). He emphasizes the fact that the short sale and the long purchase "were without economic reality" and "economic substance" and thereby do not come within the broad requirement of Section 23 that the loss be "incurred in any transaction entered into for profit."

The Commissioner attempts to make more precise his amorphous criterion of "economic substance." He states that taxpayer must have suffered a "true loss" and must have entered into the transaction for profit.

As for the "loss" aspect, it is true that taxpayer, by hedging, has minimized the possibility of risk by future movements of market prices. Taxpayer did repurchase stocks to replace those she sold short. However, there was capital loss in the sale of the originally-purchased stocks because of a drop in the market price from the earlier cost basis. The loss involved here was the decrease in the value of the stocks sold. *The only question is when that capital loss is realized,* and we have rejected Commissioner's argument, supra, that the loss from the short sale was realized within the wash sale period. In realizing the loss on December 30, taxpayer established a new basis for the stock purchased long; and it is against this new basis that gain or loss must be established in the future.

As for the profit element as part of the criterion of "economic substance," it is sufficient that the sale was made to establish a capital loss. It is an everyday occurrence for a taxpayer to time the sale of capital assets to match up capital losses and gains. Such sales are entered into for "profit" to the degree that they ultimately minimize tax liability, thereby increasing the net business income of the taxpayer. In the instant case, taxpayer reported $42,316.28 as long term capital gain for the tax year 1953. Against this gain, taxpayer suffered long term capital losses of $38,710.22, of which only a part, $14,770.31, resulted from the transactions before us.

To hold that the sale and purchase of identical stocks is without economic substance is contrary to the unchallenged position that taxpayer can be at the same time short and long in identical stocks. There is no suggestion that Commissioner intends to close out such a position.

The cases cited by the Commissioner in which loss deductions were disallowed because of lack of economic substance have this consistent element: taxpayers, by manipulation or chicanery, were attempting to create a loss deduction.

However, here taxpayer has suffered a capital loss because of the depreciation in value of her stocks at the time of sale. The only question is whether taxpayer realized her loss at the proper time.

In the recent case of Knetsch v. United States, 1960, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128, the Court held that a complex transaction which resulted in substantial "interest" deductions was a "sham." There was no indebtedness between taxpayer and his purported creditor upon which interest could be paid. "What [the taxpayer] was ostensibly 'lent' back was in reality only the rebate of * * * the so-called 'interest' payments. The [amount retained by the purported creditor] was its fee for providing the facade of 'loans' whereby [taxpayers] sought to reduce their 1953 and 1954 taxes * * *." Id., 364 U.S. at page 366, 81 S.Ct. at page 135. In the instant case, however, we are not faced with a sham transaction.

In Higgins v. Smith, 1940, 308 U.S. 473, 476, 60 S.Ct. 355, 357, 84 L.Ed. 406, the Court disallowed a loss on the sale of stock by taxpayer to his wholly-owned corporation, because there was "not enough of substance in such a sale finally to determine a loss."

In two other cases cited by Commissioner, the Court assessed liability to taxpayer rather than to an alternative party utilized solely in an attempt to shift the incidence of the tax. In Griffiths v. Commissioner, 1939, 308 U.S. 355, 357, 60 S.Ct. 277, 278, 84 L.Ed. 319, the taxpayer set up a wholly-owned corporation to which he transferred certain stock he owned. The corporation sold this stock at a profit and agreed to pay over to the taxpayer the receipts from the sale. The Court held that such capital gains must be reported by the taxpayer. The "technically elegant arrangement" of creating a conduit corporation established solely for the purpose of disposing of the stock in question could not disguise the fact that the sale was made directly from taxpayer to the vendee. Similarly, in Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, the Court disregarded the transfer (in the form of a "liquidating dividend") of the sole asset of a corporation to its stockholders who, in turn, sold such asset. The Court held that the sale was controlled by the corporation and assessed tax liability to it.

An analysis of the facts in the foregoing cases in which the Court looked through the formal structure of the transaction distinguishes those cases from the one at bar. Two cases involved attempts artificially to shift the incidence of the tax. One case could result in no loss since the taxpayer sold, in effect, to himself. The recent interest case was a sham transaction in which no indebtedness was created. Here, there was an actual capital loss suffered; and there was no sham.

The facts of the Knetsch case which disallowed an interest deduction were far more extreme than here. In the case at bar, the proper remedy to close the purported loopholes may be found described in these terms:

> "To disallow the 'interest' deduction because the annuity device was devoid of commercial substance is to draw a line which will affect a host of situations not now before us and which, with all deference, I do not think we can maintain when other cases reach here. The remedy is legislative. Evils or abuses can be particularized by Congress." Knetsch v. United States, 1960, 364 U.S. 361, 371, 81 S.C. 132, 138, 5 L.Ed.2d 128 (dissenting opinion).

Tax liability in the case before us should not be assessed on a strained interpretation of the wash sale section which would create an isolated exception to the established securities practice of fixing the effective tax date of a short sale. Neither should tax liability here be assessed on the general ground that the hedging transaction broadly lacked "economic substance" The proper and orderly method of assessing liability, in the absence of Congressional action, is

for the Commissioner to integrate his short sale regulations with the wash sale provisions of Section 118. To ask us to do this, on a piecemeal basis, is to lead to uncertainty in this and related areas.

The decision of the Tax Court is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.