MAIN LINE DISTRIBUTORS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87295. Filed March 16, 1962.

*Fred Siegel, Esq.,* for the petitioner.
*Joseph P. Crowe, Esq.,* for the respondent.

# 1092

OPINION.

OPPER, *Judge:* Respondent treated the call and short sale as parts of a single transaction. He computed the net result as follows:

Costs:

| | | |
|---|---:|---:|
| Paid to Oppenheimer & Co. for call | $750.00 | |
| Charge by Oppenheimer & Co. for shares pursuant to call | 32,250.00 | |
| Amount paid lender of stock incident to short position | 12,500.00 | $45,500.00 |

Less:

| | | |
|---|---:|---:|
| Credit by Oppenheimer & Co. on exercise of option for dividend paid during option period | 12,500.00 | |
| Proceeds of short sale | 31,479.82 | 43,979.82 |
| Net short-term capital loss | | 1,520.18 |

In this we think he was correct.

The short sale and the purchase of the call, which were planned and contracted for simultaneously, were obviously hedges against each other.[1] Had such a hedge been undertaken in the course of any regular trade or business conducted by petitioner, it might have been deductible as ordinary and necessary expense of its operations. *Corn Products Co.* v. *Commissioner*, 350 U.S. 46 (1955). In situations of that kind we have permitted dealers or traders in securities, who were regularly engaged in that business, to deduct the cost of dividends paid on short sales as ordinary and necessary expenses. *W. Hinckle Smith*, 44 B.T.A. 104 (1941); *Norbert H. Wiesler*, 6 T.C. 1148 (1946), affd. 161 F. 2d 997 (C.A. 6, 1947), certiorari denied 332 U.S. 842 (1947); *W. T. Wilson*, 10 T.C. 251 (1948), affirmed sub nom. *Wilson Bros. & Co.* v. *Commissioner*, 170 F. 2d 423 (C.A. 9, 1948), certiorari denied 336 U.S. 909 (1949); *Commissioner* v. *Wilson*, 163 F. 2d 680 (C.A. 9, 1947), affirming a Memorandum Opinion of this Court, certiorari denied 332 U.S. 842 (1947). See *Deputy* v. *duPont*, 308 U.S. 488 (1940); and cf. *Dart* v. *Commissioner*, 74 F. 2d 845 (C.A. 4, 1935), reversing 29 B.T.A. 125 (1933).

In the present circumstances, however, petitioner was not a dealer or trader in securities so that this operation cannot be considered a part of its regular business. In *Gladys G. Terbell*, 29 B.T.A. 44,

---

[1] Petitioner phrases it that "The purpose for purchasing the call in this situation was for the protection of petitioner in the event the price of the stock sold short did not go down to the extent of the dividend and the cheapest method of getting such protection is through the purchase of a call." It also states in its brief: "At the time the call was exercised by petitioner, the evidence showed the price of the stock sold short did not fall by as much as the amount of the dividend and that by exercising its call, petitioner was able to make a better purchase to close its short sale at the option price in the call."

45 (1933), which was affirmed per curiam 71 F. 2d 1017 (C.A. 2, 1934), and was referred to with apparent approval in *Deputy* v. *duPont*, *supra*, in the same footnote in which the *Dart* case is mentioned, we said:

> It is respondent's view that the amount of $22,500 may not be deducted either as interest or as an ordinary and necessary expense, but that it is an item of cost to be taken into consideration when the transaction is finally completed by a covering purchase. I.T. 1764, C.B. II–2, p. 22; S.M. 4281, C.B. IV–2, p. 187. We find no authority holding to the contrary and petitioners call our attention to none. It is clear that the sum of $22,500 paid the lender of the stock was not interest *per se*, and the petitioners do not seriously contend that it is. Nor can the sum paid be regarded as an ordinary and necessary expense of carrying on a trade or business. We have only the stipulated facts and there is no suggestion in those facts that the decedent was engaged in the business of making short sales or in dealing in securities generally.

We recently took a similar position in *Empire Press, Inc.*, 35 T.C. 136 (1960), where we said in disallowing to a corporate taxpayer a deduction similar to that claimed here (p. 141):

> The petitioner was engaged in the printing business. However, it has made no attempt to relate its [short] transactions * * * to its business.

And in *Corn Products Co.* v. *Commissioner*, *supra* at 51–52, 53–54, the Supreme Court said:

> Admittedly, petitioner's corn futures do not come within the literal language of the exclusions set out in that section [117(a) of the 1939 Code]. They were not stock in trade, actual inventory, property held for the sale to customers or depreciable property used in a trade or business. But the capital-asset provision of § 117 must not be so broadly applied as to defeat rather than further the purpose of Congress. * * * *Congress intended that profits and losses arising from the everyday operation of a business be considered as ordinary income or loss rather than capital gain or loss. The preferential treatment provided by § 117 applies to transactions in property which are not the normal source of business income.* * * * [Emphasis added.]
>
> * * * Moreover, it is significant to note that practical considerations lead to the same conclusion. To hold otherwise would permit those engaged in hedging transactions to transmute ordinary income into capital gain at will. * * * [I]f a sale of the future created a capital transaction while delivery of the commodity under the same future did not, a loophole in the statute would be created and the purpose of Congress frustrated.

This is not to say that where a taxpayer makes a short sale and is required to pay a dividend it will always be treated as a capital item. Cf. *Doyle* v. *Commissioner*, 286 F. 2d 654 (C.A. 7, 1961), reversing a Memorandum Opinion of this Court. We deal only with the facts shown here by the record. But in this instance the dividend had already been declared when petitioner bought the call and made the short sale and it is apparent that the call and short sale were but two halves of a single transaction. Petitioner knew that it would have to pay the amount of this dividend on account of its short position

in the stock and would obtain credit for an exactly equal amount on its exercise of the call. It is stipulated that the vendor of the call on petitioner's exercise of the option "Pursuant to the terms of the call * * * charged petitioner with the agreed purchase price of $64.50 [per share] or $32,500.00 *and credited petitioner with $25.00 per share or $12,500.00 representing the dividend paid* * * * of $25.00 a share on December 13, 1956. The petitioner paid a net amount of $19,750.00 * * * [for the 500 shares involved in the call] and delivered the five hundred shares to * * * cover the short sale * * *." (Emphasis added.)[2] "That was the crux of the business to [petitioner] and that is the crux of the business to us." *Griffiths* v. *Commissioner*, 308 U.S. 355, 357 (1939).

The call and its accompanying adjustment for the receipt of the dividend were admittedly capital items,[3] and since the commitments were reciprocal, and were entered into and closed out together, we think the entire operation must be viewed as a capital transaction. "A given result at the end of a straight path is not made a different result because reached by following a devious path." *Minnesota Tea Co.* v. *Helvering*, 302 U.S. 609, 613 (1938).

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

FAY, *J.*, dissenting: I cannot agree with the majority opinion of the Court.

The question presented upon this record is whether the petitioner is entitled to deduct as a business expense sums in lieu of dividends paid the lender of stock in a short sale transaction.

It has long been held that this type of payment is properly an expense rather than a capital item. *Dart* v. *Commissioner*, 74 F. 2d 845 (C.A. 4, 1935), reversing 29 B.T.A. 125 (1933), followed in *W. Hinckle Smith*, 44 B.T.A. 104 (1941); *Norbert H. Wiesler*, 6 T.C. 1148 (1946), affd. 161 F. 2d 997 (C.A. 6, 1947), certiorari denied 332 U.S. 842 (1947); *W. T. Wilson*, 10 T.C. 251 (1948), affirmed sub nom. *Wilson Bros. & Co.* v. *Commissioner*, 170 F. 2d 423 (C.A. 9, 1948), certiorari denied 336 U.S. 909 (1949); *Commissioner* v. *Wilson*, 163 F. 2d 680 (C.A. 9, 1947), affirming a Memorandum Opinion of this Court. The expense is an expense of an incidental investment of a

---

[2] Neither party refers to or apparently relies on the enactment of the 1954 Code, particularly section 1233 thereof.

[3] As a further indication of the capital nature of the entire transaction, had petitioner been a stockholder it would not have been charged with ordinary income because of the distribution on any stock owned by it. As petitioner points out: "The dividend paid by Midland Enterprises, Inc., was nontaxable to its stockholders who received the dividend, since the corporation had a deficit surplus during the year 1956 and it had no earnings or profits during that year."

corporation; therefore, the sum should be deductible as an ordinary and necessary business expense.

I cannot agree with the premise that the short sale and the call "were obviously hedges against each other." While the call was clearly a hedge against the short sale, the short sale was not a hedge against the call. A call needs no hedge since by its nature the loss on a call is limited to its cost.

Clearly, the basic transaction was the short sale and the only hedge was the call. This becomes apparent from the fact that the petitioner could not make a profit on the call so long as it maintained its short position. However, as long as the petitioner maintained its short position, it was in a position to profit from it, and this profit could be in nowise limited by the call but only reduced somewhat by the price of the call.

Having established that the basic transaction was the short sale and the only hedge was the call, it must follow that the dividend payment in issue is totally unrelated to the hedge in the transaction. The payment was made to the lender of the stock in the short sale and was made pursuant to the standard agreement that a short seller will reimburse his lender in the amount of any dividend paid during the loan. The payment, therefore, related solely to the short sale and would have been made in any event, even if the petitioner had not purchased the call.

The case of *Gladys G. Terbell*, 29 B.T.A. 44 (1933), affd. 71 F. 2d 1017 (C.A. 2, 1934), has been suggested as authority for denying the deduction with which we are concerned. This case has been overruled on one point and largely superseded by subsequent developments in tax law with respect to the other.

In *Terbell* the taxpayer had engaged in one short sale transaction. He had paid a sum to his lender of the stock in lieu of dividends and sought to deduct it as a business expense. This Court denied the deduction on two grounds. The first of these was that such a payment was properly a capital item. The second was that it was not shown that the expense related to the taxpayer's trade or business.

With respect to the first point, *Terbell* was overruled by *Dart* v. *Commissioner*, *supra*, and thereafter by a long line of cases in this Court and others which were based on *Dart*. See the cases cited in third paragraph of this dissent. In *Dart* v. *Commissioner*, *supra*, the Fourth Circuit reversed this Court. The *Dart* case involved a payment in lieu of dividends made by a short seller to the person who loaned the stock for the short sale. The short seller was a trader in securities. The Commissioner contended that although a dealer in securities might deduct this type of payment as a business expense a trader was required to treat it as a capital payment. This Court

had held for the Commissioner. In overruling this holding, the Court of Appeals did not rely on the fact that the taxpayer was engaged in any trade or business for it said:

It is argued that the expenditure of the amount equal to the dividend is in the nature of a capital expenditure and adds to the value of the stock when purchased to close the "short" transaction. We do not see how any value could be added to something which is not in existence. The "short" seller owns no stock, and has none of the rights of a stockholder because of the borrowed stock. As was said by the Supreme Court in the case of Provost v. United States, supra: "* * * Neither the lender nor the borrower retains any interest in the stock which is the subject-matter of the transaction and which has passed to and become the property of the purchaser. Neither the borrower nor the lender has the status of a stockholder of the corporation whose stock was dealt in, nor any legal relationship to it. Unlike the pledgee of stock who must have specific stock available for the pledgor on payment of his loan, the borrower of stock has no interest in the stock nor the right to demand it from any other."

The amount paid out in the "short" transaction can in no way add to the value of stock which the taxpayer does not possess at the time of the payment, and in no way benefits him when he ultimately purchases the stock to close the transaction. The expenditure is one made solely for the purpose of continuing to hold the borrowed stock and is not an incident to ownership but an expense paid in order to maintain the taxpayer's position in the market with respect to that particular transaction.

More significantly it said:

It is also contended that, while dealers are allowed to deduct expenditures of this character in the year in which they are made, a different rule should apply to those who, while engaged in the business of trading in stock, are not dealers. We do not think there is any merit in this contention. Subsection (a)(1) of section 214 of the Revenue Act of 1926 and (a) of section 23 of the Revenue Act of 1928 make no distinction as between dealers and others who are engaged in carrying on a trade or business, nor do we see why any distinction should be made. As we said in Colony Coal & Coke Corp. v. Commissioner, 52 F.(2d) 923, *the real test is the character of the transaction that occasions the payment.* [Emphasis supplied.]

Therefore, as I read the *Dart* case and the line of cases based on it, they stand for the following proposition: With regard to payments in lieu of dividends, it is the nature of the payment and not the business of the payor that determines that they are properly an expense.

With respect to the second point, the law has been greatly changed since the *Terbell* case. At the time of the *Terbell* case, it was necessary for an individual who sought a business expense deduction to show that his profit-making activities amounted to a "trade or business." Such a showing was also necessary at the time that the Supreme Court cited *Terbell* in *Deputy* v. *duPont*, 308 U.S. 488 (1940). (That Court cited the case for the proposition that an individual's expenses must relate to his trade or business to be deductible.) However, in 1942 Congress enacted as section 23(a)(2) of the Internal Revenue Code of 1939 a provision which has become section 212 of

the 1954 Code. That provision allows an individual to deduct the expenses of a profit-making activity whether or not those expenses relate to his "trade or business." Of course, this issue was relevant in all the decided cases concerning payments by short sellers in lieu of dividends because all these cases relate to individuals and all of them relate to taxable years prior to 1942. This issue has no relevance in the instant case because a corporation is entitled to deduct the expenses of incidental investments. Bittker, Federal Income Taxation of Corporations and Shareholders 44; 1 Rabkin and Johnson, Federal Income, Gift and Estate Taxation, sec. 3.02(1), pp. 308–309; Surrey and Warren, Federal Income Taxation 268 (1960). Therefore, I do not believe the quotation from *Gladys G. Terbell* is valid authority for denying this deduction.

Nor do I believe the case of *Corn Products Co.* v. *Commissioner*, 350 U.S. 46 (1955), to be in point. In *Corn Products*, the Supreme Court held that the taxpayer's purchase of corn futures was so closely related to the taxpayer's business that the futures contracts it held were not capital assets. As a result, income from the sale of those futures contracts was deemed to be ordinary income. In the present case, it is clear that the short sale transaction was not so closely related to the petitioner's business of dealing in appliances that any income from it would be ordinary income. In view of section 212 of the 1954 Code, the Supreme Court could not have intended to hold that an item is properly an expense only when it is intimately related to an active trade or business. If this were so, then section 212 of the Code would be useless. Of course, it is recognized that section 212 relates only to individuals. It is cited here to show that an item may be classified as an expense rather than as a capital item even though it is not closely related to a transaction in the ordinary course of an active trade or business. Corporations are also entitled to deduct their investment expenses, as was pointed out above.

In further support of their position, the majority has cited *Empire Press, Inc.*, 35 T.C. 136 (1960), a case which is distinguishable. In *Empire Press* it did not appear that there was any real transfer of the stock involved. Further, there was no possibility that the petitioner could make a profit on the transaction there involved. Finally, one of the corporate officers, a witness called by the respondent, testified that the transaction was entered into solely for tax purposes and not to make profit. In the present case, all of the stock was actually bought and sold and title to it was actually transferred. Further, under the transaction here the petitioner had as much opportunity to make a profit as does any other short seller.

Finally, the majority has emphasized certain facts which they feel justify requiring capital treatment of the dividend payment by the petitioner. First, they indicate that the petitioner knew that a divi-

dend would be paid at the time it entered into the transaction. The significance of this is somewhat obscure. The mere fact that an individual knows he will incur an expense at the time he enters a transaction does not justify a requirement that he treat that expense as a capital item.

The second fact emphasized by the majority is that the call contract was purchased at the same time that the stock was sold short and contained a provision that the stock could be purchased at a stipulated price less any dividends paid during the life of the option. The purchase of a call upon entering a short sale transaction is common and has valid purposes aside from tax motives. See Leffler, The Stock Market, par. 8, p. 374 (2d ed.); Filer, Understanding Put and Call Options 64; 16 Encyc. Brit., Options (Stock), 832-3 (1961). The pricing provision in a call contract reducing the price by the amount of any dividends paid is a standard provision. See the form contract reprinted in Leffler, *supra* at 366. Of course, market movements depending as they do upon the judgment of a large number of buyers and sellers are not scientifically measurable. However, the pricing provision in question is undoubtedly inserted in call contracts because, in the absence of any other factor relating to the value of stock, the price of a stock is expected to fall approximately the amount of the dividend on the ex dividend date. Indeed, that was the case here. Although the stock did not fall quite as low as the option price, it did fall from the price of $63 prior to the payment of the dividend to about $40 after the dividend. Thus, had the petitioner been required to purchase the covering stock at market, it would have been required to pay one or two points more per share but could have saved the price of the option. Therefore, the fact that the petitioner acquired its covering stock through the exercise of the option rather than through a market purchase would have had an insubstantial effect on the transaction. It is, of course, essential that the call and the short sale transactions be closed out at the same time if the call is needed to provide the covering stock.

The third point mentioned by the majority is the fact that the dividend paid by Midland was nontaxable. I do not believe that the nature of the transaction between the corporation and its stockholder should be controlling with regard to the payment made by the petitioner because, as was pointed out in the quotation from *Dart* v. *Commissioner*, *supra*, neither the borrower nor the lender of the stock involved in the short sale would be a stockholder at the time the dividend was paid.

Therefore, I do not believe that any of these facts or all of them taken together justify requiring that the payment with which we are concerned be treated as a capital item. I believe that this case falls squarely within the rule of *Dart* v. *Commissioner*, *supra*, and that the

taxpayer should be allowed to deduct the sums concerned as a business expense.

A taxpayer is entitled to decrease the amount of his taxes by any means which the law permits. *Gregory* v. *Helvering*, 293 U.S. 465 (1934). The fact that a taxpayer's motive in entering into a transaction may have been the reduction of his taxes is immaterial so long as the transaction was not a sham. I believe that to hold the expense here nondeductible requires the creation of law to an extent inappropriate to the judicial function.

FISHER, MULRONEY, and FORRESTER, *JJ.*, agree with this dissent.