1955 PRODUCTION EXPOSITION, INC., IN DISSOLUTION, SAUL POLIAK, J. STANLEY HALPERIN, AND ELLIOTT E. RUSKIN, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

SAUL POLIAK, TRANSFEREE OF 1955 PRODUCTION EXPOSITION, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 88556, 88557.   Filed October 22, 1963.

*J. Stanley Halperin*, for the petitioners.
*Leon M. Kerry*, for the respondent.

OPINION

MULRONEY, *Judge:* These consolidated cases involve a deficiency in income tax determined by the respondent for the year 1955 in the amount of $26,000 in the case of 1955 Production Exposition, Inc., in

---

dissolution, Saul Poliak, J. Stanley Halperin, and Elliott E. Ruskin, Trustees, docket No. 88556, and a liability determined by the respondent in the amount of $26,000 in the case of Saul Poliak, Transferee of 1955 Production Exposition, Inc., docket No. 88557. They present an issue of whether a business deduction results from a $50,000 payment by the petitioner corporation in a short sale transaction where the facts have all been stipulated.

The facts, which we find and as stipulated, are set forth below.

The petitioner, 1955 Production Exposition, Inc., is a corporation organized on March 29, 1954, under the laws of the State of New York, with its office % J. Stanley Halperin, 76 Beaver Street, New York 5, N.Y.

The petitioner, 1955 Production Exposition, Inc., was dissolved on December 30, 1955, under section 105 of the Stock Corporation Law of the State of New York by filing with the secretary of state of New York a certificate of dissolution pursuant to article 10 of said statute.

At the time of its dissolution, Saul Poliak, J. Stanley Halperin, and Elliott E. Ruskin were the president-treasurer, vice president, and secretary, respectively, of the petitioner and transferor corporation, constituting all of its officers, and, in addition, were all of its directors. Since the dissolution of the transferor corporation the aforesaid three individuals are the liquidating trustees of the transferor corporation duly authorized by the laws of the State of New York to act for and on behalf of the transferor corporation.

As at December 30, 1955, the date of dissolution, the assets and liabilities of 1955 Production Exposition, Inc., were as follows:

|  | Book value | Fair market value |
| --- | --- | --- |
| Assets: |  |  |
| Cash in bank | $29,728.35 | $29,728.35 |
| Deposit-real estate | 25,000.00 | 25,000.00 |
| Due from New York State Tax Commission | 506.24 | 506.24 |
| Due from broker | 63,026.75 | 63,026.75 |
| Total assets | 118,261.34 | 118,261.34 |
| Liabilities: |  |  |
| Due on short sale contract | 63,120.50 | [1] 14,375.00 |
| Reserve for Federal income tax | 9,422.34 | 9,422.34 |
| Accounts payable | 5,453.81 | 5,453.81 |
| Total liabilities | 77,996.65 | 29,251.15 |
| Capital: |  |  |
| Capital stock | 500.00 | 500.00 |
| Earned surplus | 39,764.69 | 88,510.19 |
| Total capital | 40,264.69 | 89,010.19 |
| Total liabilities and capital | 118,261.34 | 118,261.34 |

[1] Market value of the stock of C.W.C. Liquidating Corp. on Dec. 30, 1955, was 5¾ × 2,500 shares or $14,375.

The petitioner Saul Poliak is the transferee of the assets of the transferor corporation, 1955 Production Exposition, Inc.

Upon dissolution of 1955 Production Exposition, Inc., the amounts distributed in complete liquidation to the transferee on December 30, 1955, amounted to $89,010.19, as filed on Form 1099L, U.S. Treasury Department, Internal Revenue Service, U.S. Information Return, and comprising the following amounts:

| | |
|---|---|
| Cash | $29,728.35 |
| Fair market value of property | 59,281.84 |
| Total | 89,010.19 |

On December 22, 1955, petitioner transferor corporation sold short on the open market through the brokerage firm of Ira Haupt & Co., member of the New York Stock Exchange, 111 Broadway, New York, N.Y., 2,500 shares of stock of C.W.C. Liquidating Corp. The net proceeds received from the sale was $63,120.50, computed as follows:

| | | |
|---|---|---|
| Gross proceeds (2,500 shares @ $25.50 per share) | | $63,750.00 |
| Less: | | |
| Brokers commission | $522.00 | |
| New York State tax | 100.00 | |
| Federal tax | 7.50 | |
| | | 629.50 |
| | | 63,120.50 |

In accordance with custom and usage prevailing on established stock exchanges, the net proceeds of the short sale described herein were retained by the broker and credited to the account of the petitioner corporation against the petitioner corporation's obligation under the short sale contract to close out the short sale by purchase of 2,500 shares of C.W.C. Liquidating Corp. stock.

The C.W.C. Liquidating Corp., formerly known as Circle Wire & Cable Corp., was a public corporation listed on the American Stock Exchange. On November 28, 1955, the stockholders of C.W.C. Liquidating Corp., then known as the Circle Wire & Cable Corp. (the name was changed on December 1, 1955), ratified a plan of liquidation. The plan of liquidation contemplated complete distribution prior to August 31, 1956, except for such reserves as might be necessary to meet contingent claims and other liabilities.

On December 23, 1955, the petitioner transferor corporation was notified by Ira Haupt & Co. that, pursuant to the United States Securities Exchange Act of 1934 and Regulation T of the Federal Reserve Board, the petitioner, transferor corporation, was required to furnish margin in the amount of $46,300 to cover the short sale made by petitioner transferor on the preceding day.

On December 23, 1955, the petitioner transferor corporation delivered its corporate check in the amount of $46,300 to Ira Haupt & Co. pursuant to the said margin call. On December 19, 1955, C.W.C. Liquidating Corp. declared an initial liquidating payment of $20 per share to stockholders of record as of December 29, 1955, payable January 6, 1956. The stock traded "ex-dividend" on December 23, 1955, on which date all short sellers were charged with the obligation to reimburse the lenders on or before December 29, 1955, the settlement date, the payment of $20 per share.

On December 29, 1955, the petitioner corporation paid the sum of $50,000 (2,500 shares @ $20 per share) to the brokerage firm of Ira Haupt & Co., which sum the petitioner corporation was obligated to pay in connection with the short sale contract described above, said amount representing the sum equal to the payment due with respect to stock borrowed to cover said short sale.

On July 2, 1956, C.W.C. Liquidating Corp. made a second liquidating payment of $5 per share to holders of record as at July 2, 1956. On August 24, 1956, C.W.C. Liquidating Corp. made a third liquidating payment of $1.10 per share to holders of record as at August 23, 1956. On November 18, 1959, C.W.C. Liquidating Corp. made a fourth and final liquidating payment of $0.19442 per share. For the period October 16, 1955, through June 1, 1956, the high and low market prices of stock of C.W.C. Liquidating Corp. (name prior to December 1, 1955—Circle Wire & Cable Corp.) were as follows:

| Period | High | Low |
|---|---|---|
| Oct. 16, 1955, through Nov. 11, 1955 | 25¼ | 23¾ |
| Nov. 13, 1955, through Dec. 22, 1955 | 25⅝ | 25 |
| Dec. 23, 1955, through Dec. 31, 1955 | 5¾ | 5½ |
| Jan. 1, 1956, through Jan. 27, 1956 | 5¾ | 5 |
| Jan. 28, 1956, through June 1, 1956 | 6⅛ | 5⅝ |

On December 22, 1955, the stock of C.W.C. Liquidating Corp. had sold at 25½.

On December 23, 1955, the stock of C.W.C. Liquidating Corp. had sold at 5½.

On January 3, 1956, Saul Poliak, transferee, purchased in the open market 2,000 shares of stock of C.W.C. Liquidating Corp. at 5¾, at a net price of $11,730, and 500 shares of stock of C.W.C. Liquidating Corp. at 5¾, at a net price of $2,932.50, to cover the short sale of 2,500 shares of stock of C.W.C. Liquidating Corp. referred to heretofore. The settlement date of the trades was January 9, 1956.

The return of the transferor corporation, 1955 Production Exposition, Inc., for the calendar year 1955, which stated its principal business "PROMOTION & OPERATION OF TRADE EXPOSITIONS" was filed with the district director of internal revenue for the district of Upper Manhattan, which disclosed a tax due in the amount of $9,422.34 and

which tax liability was timely paid. In said return the transferor corporation deducted the sum of $50,000 from its gross income.

The only issue is whether the $50,000 payment by the petitioner corporation of December 29, 1955, to the brokerage firm of Ira Haupt & Co., representing the sum equal to the liquidating dividend (2,500 shares @ $20 a share) is "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" of petitioner corporation within section 162(a) of the Internal Revenue Code of 1954.

We at one time held that in cash dividend situations arising in connection with short sale transactions by a trader in securities that amounts paid with respect to cash dividends on account of stock borrowed to cover short sales, were capital expenditures and not deductible as business expense. *J. A. Dart*, 29 B.T.A. 125, and cases cited therein. However, the *Dart* case was reversed by *Dart* v. *Commissioner*, 74 F. 2d 845 (C.A. 4), holding such payments were the trader's carrying charges for borrowed stock in short sale transactions and as such they were deductible by a trader as ordinary and necessary business expense. We followed the opinion of the Fourth Circuit in the *Dart* case in *W. Hinckle Smith*, 44 B.T.A. 104, and *Norbert H. Wiesler*, 6 T.C. 1148, affd. 161 F. 2d 997 (C.A. 6), certiorari denied 332 U.S. 842, and in *W. T. Wilson*, 10 T.C. 251, affirmed sub nom. *Wilson Bros. & Co.* v. *Commissioner*, 170 F. 2d 423 (C.A. 9), certiorari denied 336 U.S. 909.[1] Respondent has acquiesced in *H. Hinckle Smith, supra*, and *W. T. Wilson, supra*. The Court of Appeals for the Second Circuit in *Commissioner* v. *Levis' Estate*, 127 F. 2d 796, expressly refused to follow *Dart* v. *Commissioner, supra*, and held a trader in securities could not deduct as an ordinary and necessary business expense the amount of interim dividends paid to lenders of stock borrowed for delivery on short sales; that such treatment of such payments as business expenses would only be accorded to a "dealer" in securities.

Petitioner's only argument here is that this Court is now committed to the rule (acquiesced in by Commissioner) that the amount equal to cash dividends paid by the short seller on borrowed stock is an ordinary and necessary business expense, and no reason exists why the same rule should not apply when the payment is for an interim liquidating dividend as distinguished from a cash dividend. Respondent makes a persuasive argument that a different rule should apply because a distribution in complete or partial liquidation is in fact full or part payment of the stock.[2] This seems sound for an interim

---

[1] The Court of Appeals for the Ninth Circuit again indicated a similar view in *Commissioner* v. *Wilson*, 163 F. 2d 680 (C.A. 9), affirming a Memorandum Opinion of this Court.

[2] This same argument was advanced by respondent on the appeal in *Main Line Distributors, Inc.* v. *Commissioner*, 321 F. 2d 562 (C.A. 6, 1963), later discussed in this opinion and expressly rejected by the Court of Appeals.

payment of a liquidating dividend could hardly be considered a business deduction in the nature of a "carrying charge," the theory on which the cash dividend cases rest, when such payment actually discharges all or a portion of the borrower's obligation to the lender of the stock.

However, there is another ground on which we feel the decision in this case should rest. The petitioner corporation admits that this short sale transaction was no part of its regular business which was that of promotion and operation of trade expositions. Petitioner admits on brief that this short sale here involved was an "incidental investment." This alone is sufficient to uphold the respondent's disallowance of the payment as an ordinary and necessary business expense. It is not true that this Court is committed to a rule that any short seller can take a business expense deduction for the amount of a dividend paid during the period he was the borrower of stock. The rule of *Dart* v. *Commissioner, supra,* and the other cases involving cash dividends goes no further than to provide one who is not a dealer in securities can take a business deduction when his activities of buying and selling securities are such as to constitute a business of trading in securities. *Main Line Distributors, Inc.,* 37 T.C. 1090, affd. *Main Line Distributors, Inc.* v. *Commissioner,* 321 F. 2d 562 (C.A. 6, 1963). The last cited case is particularly in point here. There as here the dividend (which was in effect a liquidating dividend) was declared before the short sale. The corporate taxpayer was not in the business of dealing or trading in securities. In affirming our holding that the taxpayer could not have a business deduction for the payment that was the equivalent of the dividend on the borrowed stock, the Court of Appeals, Sixth Circuit, made it very plain that a business deduction cannot be taken by a taxpayer who is not a dealer or whose activities in the buying and selling of securities was insufficient to constitute the carrying on of a business of trading in securities.

In his concurring opinion in *Deputy* v. *Du Pont,* 308 U.S. 488, Mr. Justice Frankfurter expressed the opinion that the deduction allowed for an expenditure in connection with "carrying on any trade or business" would not be extended to an investment expense. There he stated :

Expenses for transactions not connected with trade or business such as an expense for handling personal investments, are not deductible.

Petitioner corporation was not entitled to take a business deduction for an expenditure which it admits was in connection with an incidental investment. It did not make a payment of $50,000 of an ordinary and necessary expense that was related to any trade or business it was carrying on, within the provisions of section 162(a) of the Internal Revenue Code of 1954. We hold for respondent on the issue presented. Since transferee liability in docket No. 88557 is admitted,

*Decisions will be entered for the respondent.*